## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**TEXAS INSURANCE COMPANY**                           **CIVIL ACTION**

**VERSUS**                                            **NO. 23-3412**

**TALISMAN SPECIALTY**                                **SECTION "O"**
**UNDERWRITERS, INC.**

### <u>ORDER AND REASONS</u>

Before the Court in this insurance-underwriting dispute is the Federal Rule of Civil Procedure 12(b)(6) motion[1] of Plaintiff/Counterclaim Defendant Texas Insurance Company to dismiss counts two through six of the operative counterclaim of Defendant/Counterclaim Plaintiff Talisman Specialty Underwriters, Inc. For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

This commercial case pits a surplus-lines insurer, Texas Insurance Company, against its managing general agent, Talisman Specialty Underwriters. The core of their dispute concerns Talisman's authority to write lines of insurance in Texas Insurance's name under a managing general agent agreement (the "Current MGA") between them.[2] Because the case comes to the Court on Texas Insurance's Rule 12(b)(6) motion to dismiss Talisman's operative first amended counterclaim, the factual background that follows is drawn from the well-pleaded factual allegations of that counterclaim. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 190 (5th Cir. 2009).

---

[1] ECF No. 69.

[2] *See generally* ECF No. 63 (Texas Insurance's operative first amended complaint); ECF No. 49 (Talisman operative first amended counterclaim).

In January 2023, Talisman Holding Company, Inc., an affiliate of Talisman, executed a stock purchase agreement with Texas Insurance's parent, North American Casualty Co., to buy Catlin Specialty Insurance Company (the "Stock Purchase Agreement").[3] In the initial closing, Talisman paid North American "a significant purchase premium" over the stipulated par value of Catlin's stock.[4] In return, North American agreed to permit Talisman, before final closing, to use Catlin as a "fronting" vehicle—meaning Talisman could underwrite lines of insurance in Catlin's name.[5]

On the same day the Stock Purchase Agreement was executed, Talisman, Catlin, and North American executed a managing general agent agreement (the "First MGA").[6] Under Section 29 of the the First MGA, Talisman, Catlin, and North American agreed that Texas Insurance "would immediately step into the place of Catlin under the same terms if, at any time during the term of the agreement, Catlin failed to maintain an A.M. Best financial strength rating of at least A-."[7]

Eight days after the parties executed the Stock Purchase Agreement, Talisman discovered that North American had "caused Catlin's A.M. Best rating to be completely withdrawn, rather than just downgraded . . . ."[8] According to Talisman, Catlin's ratings withdrawal triggered Section 29 of the First MGA, authorizing Talisman "to immediately underwrite lines of insurance" in Texas Insurance's name.[9]

---

[3] ECF No. 49 at ¶ 6.
[4] *Id.* at ¶ 7.
[5] *Id.*
[6] *Id.* at ¶ 8.
[7] *Id.* at ¶ 9 (internal quotation marks omitted).
[8] *Id.* at ¶ 10.
[9] *Id.*

The next day, Talisman and Texas Insurance representatives discussed Catlin's ratings withdrawal and "the path forward" under Section 29 of the First MGA.[10] During a call, Jeff Silver—the Secretary, Vice President, and General Counsel of Texas Insurance, of North American, and of North American's affiliate, Applied Underwriters, Inc.—represented to Joe Marcantel—Talisman's Director—that Talisman "could immediately begin writing policies in [Texas Insurance's] name in several lines of risks that [Texas Insurance's] parent company, North American, had previously approved for Talisman [ ] to write in Catlin's name."[11]

Just under a month after that call, in mid-February, Jeff Silver issued a letter of authority (the "Letter of Authority") for Texas Insurance "that enumerated the multiple lines of business that Catlin and [Texas Insurance] both had approved and which Talisman [ ] was already authorized to write in the name of" Texas Insurance.[12] Silver's Letter of Authority was backdated to have effect as of the date the First MGA was signed, and the Letter of Authority issued at Talisman's request.[13] Talisman requested the Letter of Authority "out of an abundance of caution" in the event that some of its "prospective counterparties might question [its] authority to write policies" in the name of Texas Insurance.[14] Silver's Letter of Authority provided that Talisman "had the authority to sub-delegate its authority to underwrite business."[15]

---

[10] *Id.* at ¶11.
[11] *Id.*
[12] *Id.* at ¶ 12 (emphasis deleted).
[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 13.

In the "several months" after Silver issued the Letter of Authority in mid-February, Talisman "exercised its authority" to write policies in Texas Insurance's name.[16] Talisman did so "with the assistance of its sub-delegees," including Rokstone Construction Risk Underwriters, Ltd. and USI Insurance Services.[17]

Four days after Silver executed the Letter of Authority, Texas Insurance sent letters to two of Talisman's sub-delegees, Rokstone and USI, "stating that Rokstone did not have any authority as a sub-delegee of Talisman[ ]."[18] But Texas Insurance soon sent the sub-delegees a second letter "retracting the false statements" contained in Texas Insurance's first letter.[19]

About three weeks later, in March, Talisman's Director Marcantel met with representatives of Texas Insurance, North American, and Applied Underwriters in Miami Beach.[20]  At that meeting, Marcantel "outlined: (i) Talisman's operations; (ii) the lines of risk, which Catlin and [Texas Insurance] had previously approved, and which Talisman [ ] had already underwritten and intended to underwrite in [Texas Insurance's] name pursuant to its exiting authorization; and (iii) how Talisman Holding intended to finance its ongoing, two-phase purchase of Catlin."[21]

---

[16] *Id.* at ¶ 14.
[17] *Id.* at ¶¶14–15.
[18] *Id.* at ¶ 15.
[19] *Id.* at ¶ 16.
[20] *Id.* at ¶ 17.
[21] *Id.*

Also at that March meeting, Marcantel "explained . . . that Talisman's ability to continue to serve as [Texas Insurance's] managing general agent, and Talisman Holding's ability to move forward with the purchase of Catlin, both depended on Talisman['s] ability to underwrite a certain quantity and quality of policies in [Texas Insurance's] name."[22] Texas Insurance's representatives responded by "specifically re-conveying [Texas Insurance's] approval of each of the risk lines previously approved and outlined in" Silver's Letter of Authority.[23] After the meeting, Marcantel "believe[d]" that Talisman and Texas Insurance were "on the same page" about the risk lines Talisman would underwrite under the First MGA and letter of authority.[24]

The next month, Talisman and Texas Insurance executed the Current MGA.[25] Talisman executed the Current MGA "based on . . . many representations" of Texas Insurance, including that Talisman "was authorized to write the now-disputed risk lines contained in the Letter of Authority in [Texas Insurance's] name and to delegate certain authority in connection therewith to sub-delegees."[26]

About two-and-a-half months after the parties executed the Current MGA, in mid-June, Texas Insurance sent letters to other Talisman sub-delegees, including Ares Insurance Mangers, claiming that Talisman lacked authority to write business

---

[22] *Id.* at ¶ 18.
[23] *Id.*
[24] *Id.* at ¶ 19.
[25] *Id.* at ¶ 20.
[26] *Id.*

in Texas Insurance's name.[27] According to Talisman, those "allegations caused substantial injury to Talisman['s] business relationships and reputation."[28]

This litigation followed. Claiming that Talisman wrote insurance policies in its name without authority and that Talisman converted premiums "duly owed" to it, Texas Insurance sued Talisman in this Court.[29] Among other claims, Texas Insurance alleges that Talisman breached the Current MGA, defrauded it, and violated the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Stat. Ann. § 51:1401–14230.[30] Texas Insurance later sought a preliminary injunction, which Judge Vance denied.[31]

Talisman in turn brought seven counterclaims against Texas Insurance.[32] But only five of them—counts two through six—are relevant here.[33] For count two, Talisman asserts a claim for tortious interference with business relations.[34] More specifically, Talisman alleges that Texas Insurance took "deliberate and unjustified actions to interfere" with Talisman's "business arrangements with its sub-delegees, including Rokstone and Ares, by sending them letters falsely alleging that Talisman . . . did not have authority to conduct business on [Texas Insurance's] behalf."[35]

---

[27] *Id.* at ¶ 21.
[28] *Id.*
[29] *See* ECF No. 63 (operative first amended complaint).
[30] *Id.* at ¶¶ 68–154.
[31] *See* ECF No. 73. The case was transferred to Section "O" in December 2023. ECF No. 77.
[32] *See* ECF No. 49 (operative first amended counterclaims).
[33] *See* ECF No. 69 at 1 (Texas Insurance moving to dismiss only counts two through six).
[34] ECF No. 49 at ¶¶ 27–37.
[35] *Id.* at ¶ 31.

For counts three and four, Talisman asserts claims for "common law fraud" and violations of LUTPA.[36] Talisman bases those claims on Texas Insurance's alleged "material omissions, material misrepresentations, and intentional concealment of material facts," "including, but not limited to," Texas Insurance's alleged "false representations" that Talisman "was authorized to underwrite and manage, with the assistance of sub-delegees, certain lines of insurance in [Texas Insurance's] name"—covenants that Texas Insurance had "no intention of honoring."[37]

For count five, Talisman asserts a claim for fraud under Article 1953 of the Louisiana Civil Code.[38] The factual basis for that claim is Texas Insurance's alleged misrepresentation, suppression, or omission of "true information—namely, the extent of Talisman['s] authority to underwrite lines of risk, managing those lines with the assistance of sub-delegees, in [Texas Insurance's] name."[39]

Finally, for count six, Talisman asserts a claim for detrimental reliance under Article 1967 of the Louisiana Civil Code.[40] For that claim, Talisman alleges that it "actually and justifiably relied" on Texas Insurance's "material misrepresentations" about the extent of Talisman's authority to write insurance polices in Texas Insurance's name, and that the reliance was "to its (Talisman's) detriment."[41]

---

[36] *Id.* at ¶¶ 38–51.
[37] *Id.* at ¶ 39.
[38] *Id.* at ¶¶ 52–57.
[39] *Id.* at ¶ 54.
[40] *Id.* at ¶¶ 58–69.
[41] *Id.* at ¶ 66.

7

Now, Texas Insurance moves the Court to dismiss counts two through six of Talisman's operative counterclaims under Rule 12(b)(6).[42] Talisman opposes.[43]

## II.   LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable

---

[42] ECF No. 69.
[43] ECF No. 80.

8

to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III.   CHOICE OF LAW

Because the Court's jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332(a)(1), the Court applies the substantive law of the forum—Louisiana—to decide if Talisman has pleaded plausible counterclaims. *See generally Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). But the Court applies Texas law to interpret the MGA Agreement.[44] The parties agree on all of this.[45]

## IV.   ANALYSIS

Texas Insurance contends that the Court should dismiss counts two through six of Talisman's operative first amended counterclaims for failure to state a claim under Rule 12(b)(6). The Court considers each challenged count and claim in turn.

### A.    Count Two: Tortious Interference with Business Relations

First, Texas Insurance contends that Talisman fails to state a tortious-interference-with-business-relations claim because Talisman has not pleaded facts plausibly establishing the "actual malice" element of that claim.[46] The Court agrees.

---

[44] *See* ECF No. 49-6 at 16 ¶ 32 (Current MGA) ("It is agreed that for purposes of interpretation, this Agreement shall be deemed by the parties to have been executed in the State of Texas and shall be subject to the laws of that state.").

[45] *See* ECF No. 69-1 at 1 (Texas Insurance asserting that Louisiana law governs the parties' substantive claims and that Texas law governs interpretation of the Current MGA); ECF No. 80 at 9–19 (Talisman analyzing its substantive claims under Louisiana law and analyzing the Current MGA under Texas law).

[46] ECF No. 69-1 at 10–13.

Tortious interference with business relations is a cause of action Louisiana courts view "with disfavor." *Whitney Bank v. SMI Cos., Glob., Inc.*, 949 F.3d 196, 208 (5th Cir. 2020) (quotation and citation omitted). Courts have "observe[d] that there appear to be no reported cases in which anyone actually has been held liable for the tort." *D.H. Griffin Wrecking Co. v. 1031 Canal Dev., LLC*, No. 20-CV-1051, 2021 WL 917335, at *3 (E.D. La. Mar. 10, 2021) (Fallon, J.) (quotation and citation omitted).

To overcome Texas Insurance's Rule 12(b)(6) motion to dismiss Talisman's "disfavor[ed]" tortious-interference-with-business-relations claim, Talisman must plead facts plausibly establishing that Texas Insurance (1) "improperly influenced others not to deal with" Talisman and (2) was "motivated by actual malice in so doing." *Id.* at 207. (quotation and citation omitted). But "[i]t is not enough" for Talisman merely to allege that Texas Insurance's actions "affected" Talisman's "business interests"; Talisman instead "must allege" that Texas Insurance "actually prevented" Talisman "from dealing with a third party." *Id.* (quotation and citation omitted). And as for the "actual malice" element, Talisman must plead facts—not mere legal conclusions—plausibly establishing that Texas Insurance "was motivated by spite or ill will." *Id.* at 208. (quotation and citation omitted). Satisfying the "actual malice" element "is difficult (if not impossible) . . . in most commercial cases in which conduct is driven by the profit motive, not by bad feelings." *Id.* (quotation and citation omitted). That is "because in most cases corporations act to maximize profits, not to harm other businesses." *721 Bourbon, Inc. v. B.E.A., Inc.*, No. 11-CV-710, 2011 WL 3747231, at *9 (E.D. La. Aug. 25, 2011) (Feldman, J.) (citations omitted).

Talisman fails to plead facts plausibly establishing the "actual malice" element of its tortious-interference claim. That claim rests on letters Texas Insurance sent Talisman's sub-delegees, including Rokstone, in which Texas Insurance allegedly "falsely alleg[ed]" that Talisman lacked authority to do business on Texas Insurance's behalf.[47] But the well-pleaded allegations of Talisman's counterclaim do not support a plausible inference that Texas Insurance "was motivated" to send those letters out of "spite or ill will" rather than mere "profit motive." *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 2001-1096 (La. App. 4 Cir. 3/6/02); 812 So. 2d 834, 841. A follow-up letter that Texas Insurance sent Rokstone supports the opposite inference: Texas Insurance sent the letters to stop Rokstone from competing against it and thus "to protect and safeguard its own business interest."[48] *Lewis v. Huie-Hodge Lumber Co.*, 46 So. 685, 686 (La. 1908). Talisman's mere "conclusory statements" that Texas Insurance sent the letters "maliciously" do not suffice to state a claim. *Kalencom Corp. v. Shulman*, No. 17-CV-5453, 2018 WL 1739213, at *3 (E.D. La. Apr. 11, 2018) (Zainey, J.).

Accordingly, because Talisman fails to plead facts plausibly establishing the "actual malice" element of its tortious-interference-with-business-relations claim, the Court grants Texas Insurance's motion to dismiss this claim (count two) in full.

---

[47] ECF No. 49 at ¶ 31.

[48] ECF No. 49-4 at 2 (asserting that "the Rokstone program was in channel conflict with a current [Texas Insurance] program"). The Court may consider the letter in its Rule 12(b)(6) analysis because the letter is attached to Talisman's counterclaims. *See generally Emden v. Museum of Fine Arts, Hous.*, 103 F.4th 308, 313 n.8 (5th Cir. 2024) (noting that a court conducting a Rule 12(b)(6) analysis may properly consider documents attached to a complaint (quotation and citation omitted)).

**B.    Count Four: LUTPA**

Next, Texas Insurance contends that Talisman fails to state a LUTPA claim because, as a matter of law, LUTPA does not apply to unfair trade practices in this insurance context.[49] In support, Texas Insurance points to a Louisiana statue that provides that LUTPA "shall not apply to" any "actions or transactions subject to the jurisdiction of . . . the insurance commissioner . . . ." LA. STAT. ANN. § 51:1406(1). Talisman rejoins that LUTPA applies because Talisman's claims "do not fall within any of the deceptive acts [over] which the Insurance Commissioner has jurisdiction."[50]

Texas Insurance has the better argument. Two provisions of the Louisiana Insurance Code confirm "that unfair trade practices in the insurance context" generally "fall under the jurisdiction of the insurance commissioner" such that LUTPA "shall not apply" to them under Section 51:1406(1). *O'Meallie v. Great Lakes Reinsurance (UK) PLC*, No. 22-CV-4081, 2023 WL 4201766, at *4 (E.D. La. June 27, 2023) (Milazzo, J.) (citing *Cougle v. Berkshire Life Ins. Co. of Am.*, 429 F. Supp. 3d 208, 219 (E.D. La. 2019) (Vance, J.)). The first provision—Section 22:1963—broadly bars "unfair or deceptive act[s] or practice[s] in the conduct of the business of insurance." LA. STAT. ANN. § 22:1963. And the second relevant provision—Section 22:1967—empowers the insurance commissioner "to examine and investigate the affairs of every person engaged in the business of insurance . . . to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by" Chapter 7 of the Insurance Code.

---

[49] ECF No. 69-1 at 14–16.
[50] ECF No. 80 at 13.

LA. STAT. ANN. § 22:1967. The language of these two Insurance Code provisions "makes clear that unfair trade practices in the insurance context fall within the authority of the commissioner of insurance . . . ." *Cougle*, 429 F. Supp. 3d at 219; *see also, e.g.*, *S. Gen. Agency, Inc. v. Safeway Ins. Co. of La.*, 1999-1892 (La. App. 3 Cir. 6/7/00); 769 So. 2d 606, 608–09 (affirming dismissal of LUTPA claim in insurance context and holding that the claim was "specifically exempted" from LUTPA under Section 51:1406(1), even though the insurer's alleged actions were not "precisely defined" as an unfair or deceptive practice under the Insurance Code).

Accordingly, because Talisman's LUTPA claim arises from alleged unfair practices in the insurance context, and because unfair practices in the insurance context fall within the insurance commissioner's jurisdiction, LUTPA "shall not apply" to Talisman's claim under Section 51:1406(1). *Accord, e.g.*, *Century Sur. Co. v. Blevins*, 799 F.3d 366, 372 (5th Cir. 2015) (affirming dismissal of LUTPA claim in insurance context under Section 51:1406(1)); *Cougle*, 429 F. Supp. 3d at 219 (dismissing LUTPA claim in insurance context under Section 51:1406(1)); *O'Meallie*, 2023 WL 4201766, at *4 (same). The Court therefore grants Texas Insurance's Rule 12(b)(6) motion to dismiss Talisman's LUTPA claim (count four) in its entirety.

## C.    Count Six: Detrimental Reliance

Texas Insurance next contends that Talisman fails to state a claim for detrimental reliance.[51] Under Louisiana law, "[t]he doctrine of detrimental reliance is 'designed to prevent injustice by barring a party from taking a position contrary' to

---

[51] ECF No. 69-1 at 16–19.

a prior representation and is usually brought in the absence of a written or enforceable contract between the parties." *Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 290 (5th Cir. 2024) (quoting *Drs. Bethea, Moustoukas & Weaver L.L.C. v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004)). "Because 'Louisiana does not favor recovery under a detrimental-reliance theory,' such claims must be examined 'with care and strictness.'" *Id.* (first quoting *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 232 (5th Cir. 2018); and then quoting *Albritton v. Lincoln Health Sys.*, 45,537, p. 5 (La. App. 2 Cir. 10/20/10); 51 So. 3d 91, 95).

To overcome Texas Insurance's motion to dismiss this claim, Talisman must plead facts plausibly establishing that (1) Texas Insurance made a promise to Talisman; (2) Texas Insurance knew or should have known the promise would induce Talisman to rely on it to its detriment; (3) Talisman relied on the promise to its detriment; (4) Talisman was reasonable in relying on the promise; and (5) "the quantum of damages sustained." *Id.* (internal quotation marks and citation omitted).

Texas Insurance contends that Talisman cannot state a detrimental-reliance claim based on any representations covered by written contracts because Louisiana law does not recognize a claim for detrimental reliance based on representations covered by a written contract.[52] Talisman's opposition does not specifically address this argument.[53] In any event, Texas Insurance is correct: Talisman cannot state a detrimental-reliance claim arising from representations in the "contractual

---

[52] ECF No. 69-1 at 17.
[53] ECF No. 80 at 14–15.

14

covenants" referenced in Talisman's counterclaim.[54] After all, detrimental reliance "usually functions when no written contract or an unenforceable contract exists between the parties." *Drs. Bethea*, 376 F.3d at 403. Applying that principle, other sections of this Court have consistently dismissed detrimental-reliance claims at the Rule 12(b)(6) stage where, as here, the factual "basis" for the detrimental-reliance claim "stems from the contract itself." *Thomas v. Allstate Ins. Co.*, No. 21-CV-1019, 2022 WL 15654249, at *3 (E.D. La. Sept. 29, 2022) (Guidry, J.); *accord, e.g., Dong Phuong Bakery, Inc. v. Gemini Soc., LLC*, 2022 WL 1488130, at *3 (E.D. La. May 11, 2022) (Barbier, J.) (dismissing detrimental-reliance claim at the Rule 12(b)(6) stage "because the subject matter is a contractual matter in essence"). The Court therefore grants Texas Insurance's Rule 12(b)(6) motion to dismiss Talisman's detrimental-reliance claim (count six) to the extent that counterclaim stems from representations covered by the "contractual covenants" referenced in Talisman's counterclaim.[55]

Texas Insurance next contends that Talisman fails to state a detrimental-reliance claim based on any of Texas Insurance's extra-contractual representations because the Current MGA's status as a fully integrated contract precludes Talisman from establishing that it reasonably relied on any extra-contractual representations.[56] Talisman counters that it has pleaded a plausible claim "because the parties' written agreements are not fully integrated and are ambiguous."[57]

---

[54] ECF No. 49 at ¶ 59.
[55] *Id.*
[56] *Id.* at 17–19.
[57] ECF No. 80 at 14.

On this limited record and briefing, the Court is not persuaded that it may properly dismiss Talisman's detrimental-reliance counterclaim to the extent that counterclaim is based on Texas Insurance's extra-contractual representations. "Whether a plaintiff reasonably relied on a promise is generally a fact-bound determination." *Drs. Bethea*, 376 F.3d at 403 (citation omitted). True, "Louisiana law recognizes certain situations where a plaintiff's reliance on a promise is unreasonable as a matter of law." *Id.* For example, "a plaintiff's reliance on promises made outside of an *unambiguous*, fully-integrated agreement" are "unreasonable as a matter of law." *Id.* at 404 (emphasis added) (citation omitted). Here, however, Judge Vance found the Current MGA ambiguous in its treatment of the lines of business Talisman is authorized to write.[58] And Texas Insurance, for its part, has not persuaded the Court that Judge Vance's finding is erroneous. Thus, because the Court cannot conclude on the limited record and briefing before it that the Current MGA is itself "an unambiguous, fully-integrated agreement," *id.* (citation omitted), the Court denies Texas Insurance's motion to dismiss Talisman's detrimental-reliance counterclaim to the extent that claim rests on extra-contractual representations.

### D.    Counts Three and Five: Fraud

Finally, Texas Insurance contends that Talisman fails to plead plausible fraud claims against it.[59] Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage

---

[58] ECF No. 73 at 35; *see also id.* at 53 (noting that "the Court found that the provisions in the MGA governing the scope of Talisman's authority are ambiguous").

[59] ECF No. 69-1 at 19–23.

for one party or to cause a loss or inconvenience to the other." LA. CIV. CODE ANN. art. 1953. "Fraud may also result from silence or inaction." *Id.* To overcome Texas Insurance's motion to dismiss, Talisman must plead facts plausibly establishing "(a) a misrepresentation of material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999) (citations omitted). Talisman must also plead its fraud claim with particularity under Rule 9(b). *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (recognizing that state-law fraud claims are subject to Rule 9(b)'s particularity pleading standard) . To satisfy Rule 9(b), Talisman must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Texas Insurance first contends that Talisman fails to plead plausible fraud claims because Talisman bases its fraud claims on "unfulfilled promises," and "unfulfilled promises" cannot form the basis of a fraud claim.[60] The Court is not persuaded. "Fraud may be predicated on promises made with the intention not to perform at the time the promise is made." *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 489 (5th Cir. 2009) (quoting *Sun Drilling Prods. Corp. v. Rayborn*, 798 So. 2d 1141, 1152 (La. Ct. App. 4th Cir. 2001) (internal quotation marks omitted)). And here, Talisman specifically alleges that Texas Insurance "had no intention of honoring" the relevant representations "at the time of making" the

---

[60] ECF No. 69-1 at 19–21.

representations.[61] So Talisman's fraud claim is "predicated on promises" that Texas Insurance allegedly made "with the intention not to perform at the time the promise [was] made." *Id.* (internal quotation marks and citation omitted). The Court declines to dismiss Talisman's fraud claims at the Rule 12(b)(6) stage based on this argument.

Texas Insurance next contends that Talisman fails to state plausible fraud claims because the Current MGA's merger[62] and anti-reliance[63] clauses preclude Talisman from establishing that it reasonably relied on any extra-contractual representations.[64] The Current MGA's merger clause, standing alone, does not defeat Talisman's fraud claim: Merely "agreeing to a merger clause does not waive the right to sue for fraud should a party later discover that the representations it relied upon before signing the contract were fraudulent." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 327 (Tex. 2011) (citations omitted).

To be sure, "a clear and specific disclaimer-of-reliance clause" *may* "preclude" Talisman's fraud claim. *Id.* at 332 (citation omitted). Here, the Current MGA's disclaimer-of-reliance provision is within a broader "Construction" provision that states that "each Party expressly represents and warrants that in executing this Agreement neither of them have relied upon any representation or statement not set forth herein made by such Party's administrators, representatives, or attorneys regarding the subject matter, basis, or effect of this Agreement or otherwise."[65] To

---

[61] ECF No. 49 at ¶ 39 (count three); *see also id.* at ¶ 52 (count five) (incorporating by reference "all preceding paragraphs").

[62] ECF No. 49-6 at 14 § 29(L).

[63] *Id.* at 15 § 29(S).

[64] ECF No. 69-1 at 21–22.

[65] ECF No. 49-6 at 15 § 29(S).

decide if this disclaimer-of-reliance provision is enforceable, however, the Court must "apply the so-called *Forest Oil* factors in an effort to balance society's interest in protecting parties against fraudulently induced promises with its interest in enabling parties to fully and finally resolve disputes between them." *Austin Tr. Co. as Tr. of Bob & Elizabeth Lanier Descendants Trusts for Robert Clayton Lanier, Jr. v. Houren*, 664 S.W.3d 35, 48 (Tex. 2023) (internal quotation marks and citations omitted). Those *Forest Oil* factors are whether "(1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other at arm's length; (4) the parties were knowledgeable in business matters; and (5) the release language was clear." *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008).

Unfortunately, the parties do not brief any of the *Forest Oil* factors in any detail or otherwise provide the Court the information the Court would need to definitively determine, at this Rule 12(b)(6) stage, whether the Current MGA's disclaimer-of-reliance provision is enforceable and thus bars Talisman's fraud claims. So the Court declines to dismiss Talisman's fraud claims at this stage based on Texas Insurance's arguments under the Current MGA's disclaimer-of-reliance provision.

Finally, Texas Insurance contends that the Court should dismiss Talisman's fraud claims to the extent they rest on "unspecified contractual covenants" because Talisman fails to satisfy Rule 9(b) with respect to any such claims.[66] Talisman does

---

[66] ECF No. 69-1 at 22 (internal quotation marks omitted).

not not address this argument in its opposition brief and thus forfeited any argument opposing dismissal of this species of its fraud claims.[67] *See, e.g.*, *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 574 (5th Cir. 2021) (concluding that a party forfeited an argument on an issue by failing to adequately brief it). Forfeiture aside, the Court agrees that Talisman fails to satisfy Rule 9(b)'s heightened pleading standard with respect to any fraud claims Talisman intends to assert based on "unspecified contractual covenants."[68] As to those "contractual covenants," Talisman fails to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177 (citing *Mills*, 12 F.3d at 1175). The Court therefore grants  Texas Insurance's motion to dismiss Talisman's fraud claims (counts three and five) to the extent those claims arise from "contractual covenants."

---

[67] *See generally* ECF No. 80.
[68] ECF No. 69-1 at 22 (internal quotation marks omitted).

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Texas Insurance's motion[69] to dismiss Talisman's counterclaims is **GRANTED IN PART** and **DENIED IN PART** as outlined above. Talisman's counterclaim for tortious interference with business relations (count two) and Talisman's LUTPA counterclaim (count four) are **DISMISSED WITH PREJUDICE** and in their entirety. Talisman's counterclaim for detrimental reliance (count six) is **DISMISSED WITH PREJUDICE** to the extent that it stems from representations covered by the "contractual covenants" referenced in Talisman's counterclaim. Talisman's counterclaims for fraud (counts three and five) are **DISMISSED WITH PREJUDICE** to the extent that they arise from the "contractual covenants" referenced in the counterclaim.

New Orleans, Louisiana, this 24th day of February, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[69] ECF No. 69.

21