UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TEXAS INSURANCE COMPANY,** <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> **TALISMAN SPECIALTY UNDERWRITERS, INC.,** <br><br> Defendant/Counterclaim-Plaintiff, <br><br> and <br><br> **TALISMAN INSURANCE COMPANY**, <br><br> Intervenor. | Case No.: 2:23-cv-03412 <br><br> JUDGE: BRANDON S. LONG <br><br> MAGISTRATE: JANIS van MEERVELD |

**TEXAS INSURANCE COMPANY'S OPPOSITION TO
TALISMAN COUNSEL'S MOTION TO WITHDRAW**

Plaintiff/Counterclaim-Defendant Texas Insurance Company ("Texas Insurance") files this Brief in Opposition to the Motion of Bradley Arant Boult Cummings LLP (the "Bradley Firm") to withdraw as counsel to Defendants Talisman Specialty Underwriters and Talisman Insurance Company (together, "Talisman") and stay depositions (the "Motion").

**INTRODUCTION**

The Motion is the latest in a troubling course of conduct and pattern and practice by Talisman. For months, Talisman has done nothing but impede depositions and delay this case: refusing to present its witnesses until all of Texas Insurance's witnesses are deposed first; failing to appear the morning their depositions are set; and switching out attorneys only to claim unavailability. The Motion, filed just days before Talisman's first party witnesses—its Chief Financial Officer, Helene Bradley, and its Owner, Shareholder and Head of Claims, Natalie

1

Lucia—are set to be deposed, is just the latest and is not a coincidence. It is part of the Talisman playbook. In a case currently pending in Louisiana State Court against Talisman affiliate, Talisman Casualty Insurance Company, and Talisman President, Joseph Marcantel, the Court imposed a $100,000 sanction for strikingly similar tactics, including moving to disqualify opposing counsel days before Mr. Marcantel was set to be deposed.

The Motion therefore requires careful scrutiny. Apart from impeding depositions and discovery, it stands to substantially prejudice Texas Insurance, which has been patiently waiting for its claims to be heard since 2023. What's more, Talisman admits that it has not been paying the reinsurer on the hundreds of unauthorized policies it wrote in Texas Insurance's name; in other words, it has collected tens of millions of dollars in premium in Texas Insurance's name without remitting a penny to Texas Insurance or even paying the reinsurer, contrary to Talisman's representations to this Court that the business is 100% reinsured. The Court should compel disclosure of the basis for the withdrawal, order depositions to proceed as scheduled, and order Talisman to show cause for why sanctions should not be imposed.

## FACTUAL BACKGROUND

I. **Talisman's Pattern and Practice of Delaying Discovery and Impeding Depositions.**

The parties are in the middle of a busy and contentious discovery period. For months, Talisman pressed Texas Insurance to present its witnesses for deposition while withholding production of its own documents and refusing to provide dates for its own witnesses to be deposed. This resulted in Texas Insurance's Motion to Quash seven unilaterally issued deposition notices and the July 17, 2025, Order of this Court, setting a date-certain for production of documents and ordering the parties to confer on a deposition schedule (ECF Nos. 126, 133). This, of course, led to another dispute among the parties, prompted by Talisman's refusal to present any of its

witnesses, or permit depositions of its third-party consultants to go forward, until all of Texas Insurance's witnesses were deposed. The Court intervened again, setting a reciprocal deposition schedule and ordering all depositions, including that of Talisman representative and consultant, Robert Lucia, to go forward on dates-certain set in the order (ECF No. 141).[1]

Like clockwork, various issues arose. As this Court knows, the deposition of Talisman's Vice President and "Owner" of Plaintiff-Intervenor, Talisman Insurance Company, Jeffrey Schaff, had long been scheduled to take place on October 28, 2025. The very morning of the deposition, Mr. Schaff failed to appear. He did so without warning after Texas Insurance's attorneys traveled thousands of miles to Louisiana. The Bradley Firm advised that a "personal matter" prevented him from appearing. It was later disclosed that Mr. Schaff had informed the Bradley Firm that morning of a purported conflict with the firm, and that he felt he needed a new lawyer. The basis for this "conflict" has never been revealed. Nor has it ever been explained how a conflict could have emerged more than two years into this litigation. When Mr. Schaff was then subpoenaed (at the Court's direction), he claimed that he could not appear because he was "out of the state." **Ex. 1**, Nov. 6, 2025, Email. Mr. Schaff now has new counsel and his deposition has been set for December 3, 2025, which this Motion threatens to once again delay.

A strikingly similar set of circumstances occurred with Talisman "consultant" and representative, Robert Lucia, whom Texas Insurance subpoenaed for deposition five months ago, in June 2025. Mr. Lucia is married to Talisman "Owner" and shareholder, Natalie Lucia, who purports to be Talisman's Chief of Claims. Mr. Lucia appears to operate as a *de facto* "Owner" and decisionmaker at Talisman. Mr. Lucia's deposition was twice rescheduled because the Bradley Firm claimed that it was unable to appear. *See, e.g.*, **Ex. 2**, July 16, 2025, Email. The Court

---

[1] The parties later agreed to reschedule the dates of party witnesses due to purported scheduling conflicts raised by the Bradley Firm, with a final schedule agreed to in September 2025.

3

ultimately ordered the Bradley Firm to coordinate Mr. Lucia's deposition and set his deposition for August 20, 2025 (ECF Nos. 133, 141).  One week before he was due to be deposed, Mr. Lucia suddenly retained new counsel.  The Bradley Firm "introduced" Texas Insurance to Mr. Lucia's counsel who advised that Mr. Lucia, too, was unavailable due to an undisclosed "personal issue." **Ex. 3,** Aug. 13, 2025, Email.  His deposition has yet to take place and is subject to a Motion to Compel now pending in the United States District Court for the Southern District of Florida.

Then there is a third witness, Jeffrey Harenza, another Talisman consultant whom Texas Insurance subpoenaed.  The Bradley Firm had represented that it would present Mr. Harenza for deposition.  **Ex. 2,** July 16, 2025, Email at p. 1.  His deposition was also set by this Court in its August 2025, Order (ECF No. 141).  Once again, the witness retained new counsel to whom Texas Insurance was "introduced" by the Bradley Firm.  **Ex. 4,** Aug. 11, 2025, Email at p. 2.  Remarkably, Mr. Harenza's new counsel advised that the Bradley Firm never had authority to accept service of the subpoena on his behalf.  *Id.* at p. 1.[2]

As a result of Talisman's musical chairs of attorneys and unexplained conflicts, Texas Insurance finds itself two years into this litigation without having taken the deposition of a single party witness.[3]  Talisman, by contrast, has taken six, and just two weeks ago sought to postpone the depositions of all party witnesses.  *See* **Ex. 5**, Oct. 31, 2025, Ltr. Requesting Conference.  With the Court denying that effort (ECF No. 173), and the depositions of its Chief Financial Officer and Owner looming, the Motion was filed.

---

[2] Counsel for Mr. Harenza subsequently accepted service of the subpoena and counsel for Texas Insurance and Mr. Harenza negotiated in good faith to resolve disputes over it.  Texas Insurance intends to reset Mr. Harenza's deposition date and expects Talisman's cooperation.

[3] To date, Texas Insurance has taken the deposition of two third-party witnesses subject to subpoena: (1) Jeffrey Buschmann, a partner of the Bradley Firm and fact witness who negotiated the contracts at issue; and (2) Allen Rosenbach, a third-party actuarial consultant for Talisman.  The deposition of Mr. Buschmann went forward two weeks after the date ordered by the Court as Mr. Buschmann, too, claimed to be unavailable on the date for which is deposition was ordered to take place.

The events above are not a coincidence; they are a strategy. In another matter against Talisman Casualty Insurance Company ("Talisman Casualty") and Talisman President, Joseph Marcantel, Talisman Casualty and Mr. Marcantel moved to disqualify opposing counsel days before Mr. Marcantel was due to be deposed, with Mr. Marcantel failing to appear on the noticed date. *See* **Ex. 6**, Apr. 28, 2025, Proces Verbal. The Court denied the motion to disqualify and ordered Mr. Marcantel to appear for deposition in open court with an order for civil attachment if he failed to do so, finding that Mr. Marcantel had also "evaded his appearance in Court by leaving the country." The Court further imposed a sanction of $100,000. *See* **Ex. 7**, July 17, 2025, Judgment entered in *LA Carriers, LLC v. Talisman Casualty Insurance Company, Peter Willis Fleming, Joe Marcantel, et al.*, No. C-150834, 17th Judicial District Court for the Parish of Lafourche, State of Louisiana ("*LA Carriers*"); **Ex. 8**, Minute Entry entered in *LA Carriers*. An attorney from the Bradley Firm appeared on Talisman's behalf at Mr. Marcantel's deposition once he finally appeared. **Ex. 9**, Dep. Tr. Excerpt.

II.     **The Bradley Firm's Involvement in this Litigation and the Motion.**

The Bradley Firm has been counsel of record to Talisman since this litigation's inception in August 2023. Before its involvement in the litigation, Bradley partner, Jeffrey Buschmann, negotiated the MGA Agreements underpinning this action. He is a fact witness whom Texas Insurance has subpoenaed and deposed. To date, six different attorneys from the Bradley Firm, including four partners, have entered their appearances on behalf of Talisman. The Bradley Firm is also counsel of record to Talisman in the separate litigation initiated by Talisman in this Court, *Talisman Specialty Insurance Company et al. v. North American Casualty Co. et al.*, No. 2:24-cv-893 (E.D. La.). In addition, the Bradley Firm is counsel of record to Talisman Insurance in a suit recently filed against Texas Insurance in the State of Texas, in which Texas Insurance was served

with process earlier this month. *Talisman Insurance Company v. Texas Insurance Company*, No. DC-25-16689 (Dist. Ct., Dallas Cnty. Tex.). The Bradley Firm has represented to Texas Insurance that it intends to withdraw from this newest litigation but the docket does not yet reflect that any withdrawal has been filed.

The Bradley Firm has been extensively involved in this litigation up until the day the Motion was filed. It has acted as counsel to Talisman in three separate lawsuits, filed claims and counterclaims, and has appeared for multiple depositions on Talisman's behalf. Earlier this month, two of its attorneys took the deposition of Texas Insurance Chief Operating Officer, Ace Rowley, and the Bradley Firm and counsel for Texas Insurance have been communicating extensively with respect to another round of discovery disputes over the last few weeks. Counsel in fact had a meet-and-confer scheduled for November 12, 2025, to discuss those disputes. The meet-and-confer was rescheduled by Talisman to November 13, 2025, based on an "emergency situation" raised by the Bradley Firm. *See* **Ex. 10**, Nov. 12, 2025, Email. It was during that rescheduled meet-and-confer on November 13, 2025, that the Bradley Firm informed Texas Insurance of their withdrawal. They also advised that the professional rules precluded them from appearing at the depositions scheduled for the following week. Little more than one hour later, this Motion was filed.

The Motion and supporting Memorandum provide no explanation for the abrupt application. Invoking Louisiana Rule of Professional Conduct 1.16, the Motion only goes so far as to say that "professional considerations" "require" the firm's withdrawal. The Bradley Firm asserts that ethical rules preclude it from disclosing more. After the Bradley Firm filed its Motion, the District Court ordered that it file a Memorandum in Support. The Bradley Firm took the Motion, added a single case citation, and refiled.

**STANDARD OF LAW**

"An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client." *U.S. Equal Emp. Opportunity Comm'n v. Amy's Country Candles, LLC*, No. CV 17-6565, 2019 WL 2469740, at *1 (E.D. La. June 13, 2019) (internal quotation marks and citation omitted). The withdrawal of an attorney is a matter entrusted to the sound discretion of the court. *Id.* Under Rule 1.16(c) of the Louisiana Rules of Professional Conduct, a lawyer "shall continue representation notwithstanding good cause for terminating the representation" when "ordered to do so by a tribunal." La. R. of Prof. Conduct 1.16(c). Rule 1.16(c) applies both to applications made under Rule 1.16(a), which sets forth the grounds for which an attorney "shall" move to withdraw, and Rule 1.16(b) which sets forth instances where an attorney "may" do so. *Id.* at 1.16(a)-(c).

"When evaluating whether to permit an attorney to withdraw, 'courts consider factors such as the reason withdrawal is sought, the prejudice the withdrawal may cause to the other litigants, the harm withdrawal may cause to the administration of justice, and the degree to which withdrawal may delay resolution of the case.'" *Amy's Country Candles, LLC*, 2019 WL 2469740, at *1 (quoting *Zurich Am. Ins. Co. v. Karken, Ltd.*, No. 98-2833, 1999 WL 307612, at *1 (E.D. La. May 13, 1999)). "The attorney moving for withdrawal bears the burden of proving the existence of good cause and must demonstrate that the attorney's withdrawal will not adversely affect the efficient progress of the suit." *Ford v. United Assoc. of Journeymen*, No. CV 98-400-JWD-RLB, 2018 WL 11310300, at *1-2 (M.D. La. Feb. 28, 2018) (citation omitted). "Even where good cause for withdrawal exists, it is 'incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel.'" *Id.* (quoting *Broughten v. Voss*, 634 F.2d 880, 882-83 (5th Cir. 1981)).

# ARGUMENT

I. **This Court Should Deny the Motion Until Such Time That Replacement Counsel Has Been Retained and Order the Bradley Firm to Show Cause for Why Rule 1.16 Has Been Invoked.**

 A. **The Motion Fails to Provide Adequate Basis for the Withdrawal.**

The Motion will have substantial repercussions to this action and will prejudice Texas Insurance, as detailed further below. The Bradley Firm has represented Talisman for years and has made its application in the middle of discovery, conspicuously days before Talisman's first party witnesses are due to be deposed and while the parties are negotiating additional discovery disputes. Expert disclosures are due in less than two months, with a fact discovery cut-off just four months away in a litigation that has required extensive party and third-party discovery. Given Talisman's repeated (and to date successful) efforts to delay depositions, no Talisman party witness has been deposed in this case. The Motion has already disrupted the proceedings and is certain to disrupt the remainder of the schedule.

Despite the gravity of the situation, the Motion provides no explanation for why Rule 1.16 should relieve the Bradley Firm of representation. The two-page Memorandum explains nothing more than to say that:

> The Firm has determined that ***professional considerations*** require termination of the representation under Rule 1.16 of the Louisiana Rules of Professional Conduct as adopted by the Local Civil Rules of the United States District Court for the Eastern District of Louisiana, LR 83.2.3. "An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client." *United States v. Porter*, No. CRIM.A. 12-198, 2013 WL 5232334, at *5 (E.D. La. Sept. 13, 2013) (internal quotation marks omitted). The Firm's withdrawal satisfies this standard. Applicable professional rules preclude the Firm from providing the Court greater detail.

(ECF No. 179-2 at 1-2) (emphasis added).

It is entirely unclear and unexplained (a) on what grounds the Bradley Firm has moved, including whether it is invoking the mandatory or permissive prong of Rule 1.16; (b) why and how

8

the applicable standard has been satisfied; and (c) why the professional rules "preclude the Bradley Firm from providing the Court greater detail." Courts have found the "conclusory assertion that withdrawal is required," as that here, fails to "establish that good cause exists to terminate the representation." *Ronnoco Coffee LLC v. Peoples*, No. 4:20-CV-1401 RLW, 2020 WL 7695415, at *2 (E.D. Mo. Dec. 28, 2020) (denying motion to withdraw).

The reasons for the withdrawal are relevant and important. If, for instance, the Bradley Firm has been discharged—providing grounds to move to withdraw under Rule 1.16(a)(3), subject the Court's discretion—then this is important evidence of Talisman's pattern and practice of changing attorneys before its witnesses are due to be deposed to delay depositions. Indeed, this same tactic was used by Mr. Schaff, who claimed a "conflict" with the Bradley Firm the morning of his deposition and failed to appear. Insofar as the Bradley Firm has determined that the "representation will result in violation of the rules of professional conduct or other law," under Rule 1.16(a)(1), this, too, is relevant, in a case involving fraud and Talisman's unauthorized writing of hundreds of insurance policies in Texas Insurance's name.

Texas Insurance recognizes that the Explanatory Comment to Model Rule 1.16 provides that "the lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient." However, this is not a steadfast rule that applies in every case. Courts have departed from it when justified under the circumstances and have required more than the "blanket invocation[] of 'professional considerations'" before making their determination. *Johnson v. Smithkline Beecham Corp.*, No. 2:11-CV-005782-PD, 2017 WL 2729272, at *2 (E.D. Pa. Jan. 23, 2017), *report and recommendation adopted*, No. CV 11-5782, 2017 WL 2720183 (E.D. Pa. June 23, 2017) (district court "unwilling to place its entire reliance on [counsel's] blanket invocations of 'professional considerations'" and instructing a

9

special master to determine "when [counsel] first learned that the firm's continuing prosecution of the[] cases would purportedly be untenable under Rule 1.16(a)(1)"); *see also Ronnoco Coffee LLC*, 2020 WL 7695415, at *2 (where "professional considerations" were invoked, denying motion to withdraw "[a]bsent a more detailed recitation of compelling circumstances").

### B. The Motion Will Adversely Impact the Schedule, Delay the Administration of Justice, and Prejudice Texas Insurance.

The Motion is certain to impact the schedule, delay the administration of justice, and prejudice Texas Insurance; in fact, it already has caused such impact. Filed days before the depositions of Talisman's first party witnesses were to begin, the depositions of Talisman's Chief Financial Officer, Helene Bradley, and its "Owner" and Chief of Claims, Natalie Lucia, have been stayed. With Talisman already possessing deposition testimony from six of Texas Insurance's party witnesses, Texas Insurance is significantly behind and prejudiced in securing party testimony from Talisman despite expending considerable resources to do so. It now has less than seven weeks to prepare and submit expert reports while continually attempting to schedule (and re-schedule) depositions and resolve delays caused by Talisman's conduct, all without the benefit of any party testimony. Moreover, this case cannot proceed unless Talisman is represented by counsel given that it is a corporate entity (*see infra* § I.C.) and the Bradley Firm has not provided any timeline for when Talisman is expected to retain counsel. This compounds the likely delay and prejudice that will result. *See, e.g.*, *Zurich Am. Ins. Co. v. Harken, Ltd.*, No. CIV. A. 98-2833, 1999 WL 307612, at *1-2 (E.D. La. May 13, 1999) (denying motion where there was "no evidence" that the client "will be able to adequately secure new counsel, thus delaying the administration of justice and prejudicing" the parties).

The prejudice that this Motion and any delay in the schedule will cause is real and substantial. Texas Insurance initiated this litigation in August 2023, now more than two years ago.

10

The Court did not enter a scheduling order until January 2025 and trial has now been set for May 2026, having already been continued once. Absent the preliminary injunction that Texas Insurance moved for years ago, Talisman has collected tens of millions of dollars in premium on hundreds of unauthorized policies in Texas Insurance's name. Talisman has not paid a penny of this premium to Texas Insurance and has failed to produce evidence that accounts for all of the premium that has been collected. And despite being ordered by the Court to produce the policies, themselves, with the corresponding underwriting files (ECF No. 160), it now refuses to do so. *See* **Ex. 11**, Nov. 11, 2025, and Oct. 29, 2025, Emails at pp. 1, 5 (addressing Talisman's failure to produce the policies and underwriting files in response to Interrogatory No. 11).

Of even greater concern: Talisman has not been paying the reinsurer, its own affiliated entity and Intervenor-Plaintiff, Talisman Insurance. At the October 2023 Preliminary Injunction Hearing, Talisman President Joseph Marcantel testified that the business written in Texas Insurance's name was 100% reinsured through the Quota Share Agreement between Texas Insurance and Intervenor-Plaintiff, Talisman Insurance. *See* **Ex. 12**, Oct. 12, 2023, Hearing Tr., at 175-176. This, according to Talisman, protected Texas Insurance from any harm; a representation on which the Court relied in denying the preliminary injunction. (ECF No. 73 at 69). Yet after two years of unauthorized policy-writing and collecting tens of millions of dollars on policies written in Texas Insurance's name, *Talisman still has not remitted any premium to the reinsurer*, Talisman Insurance. It has admitted this in its Interrogatory Responses, in which Mr. Marcantel verified that Talisman has not paid the reinsurer "pending the outcome of this litigation." **Ex. 13**, Talisman Interrogatory Response No. 9, at p. 4. As a result, the reinsurance intended to protect Texas Insurance Company is not in place. **Ex. 12**, Oct. 12, 2023, Hearing Tr. at 176:2-12. This exposes Texas Insurance to real and exigent risk. Its claims must be heard without further delay.

### C. The Bradley Firm Cannot Withdraw Until Substitute Counsel Appears.

The Bradley Firm represents two corporate defendants, Talisman Specialty Insurance Company and Talisman Insurance Company. In such circumstances, the Court should not "allow an attorney to withdraw unless substitute counsel enters an appearance for the client," with this rule "especially significant in cases where the client is a corporation or limited liability company." *Cape Dogwood Redevelopment Corp. v. Glob. Bowling, LLC*, No. 1:19-CV-23 RLW, 2020 WL 3172646, at *1 (E.D. Mo. June 15, 2020). "Such artificial entities can only act through agents, cannot appear pro se, and must be represented by counsel." *Id.*

The Motion does not state that substitute counsel has been retained. In its discussion with counsel for Texas Insurance on November 13, 2025, the Bradley Firm stated that it understood that Talisman was actively seeking counsel but provided no explanation for when new counsel was expected to be retained. Until such time that substitute counsel is retained, the Bradley Firm cannot withdraw and leave Talisman unrepresented. This will prejudice both Talisman and the case schedule, should Talisman's unpresented status further delay the proceedings. *See, e.g.*, *Ronnoco Coffee LLC*, 2020 WL 7695415, at *2 (denying motion to withdraw until substitute counsel entered an appearance, as withdrawal would "imperil the Scheduling Order that was entered with the parties' consent"); *see also Cape Dogwood Redevelopment Corp.*, 2020 WL 3172646, at *1.

### II. Talisman Should be Ordered to Show Cause for Why Sanctions Should Not be Imposed.

The evidence strongly indicates that the Motion is part of a tried-and-true practice: litigate a case, press for discovery from the opposing side, and once it comes time to be deposed, delay, delay, delay. Texas Insurance has already seen this with Jeffrey Schaff, it has seen this with Robert Lucia, and it sees this again now. The timing of the Motion as well as the abruptness with which it was filed, days before Talisman's Chief Financial Officer and Mr. Lucia's wife were set to be

deposed and as the Bradley Firm was in the middle of negotiating discovery disputes on Talisman's behalf, raises serious questions and concerns regarding the motivations behind the Motion and Talisman's overall litigation conduct. That its President, Mr. Marcantel, employed similar tactics to avoid deposition in another lawsuit further illustrates the need for scrutiny.

This conduct, of which this Motion appears to be a part, cannot be allowed to continue. At nearly every turn, depositions have been impeded. Courts have imposed sanctions in such circumstances, where a party has repeatedly delayed and impeded depositions and discovery, including in the suit against Talisman Casualty and Mr. Marcantel where a $100,000 sanction was imposed. **Exs. 7, 8**; *see also Kidwell v. Ruby IV, L.L.C.*, No. CV 18-02052, 2020 WL 6391260, at *3 (E.D. La. Nov. 2, 2020) (imposing sanctions where party had "a documented history of taking extraordinary steps to avoid discovery, particularly depositions," including "serially firing counsel" and "pretending not to understand the Courts' orders or agreements their own counsel have made"); *see also Whitehead v. United Prop. & Cas. Ins. Co.*, No. 1:20-CV-420, 2022 U.S. Dist. LEXIS 131101, at *18-20 (E.D. Tex. May 16, 2022) (imposing sanctions for delaying discovery and depositions, including by filing a motion for protective order to "thwart an appropriate deposition").

This Court should therefore Order Talisman to show cause for why sanctions should not be imposed against it for what has become a pattern of delay and obstruction, including, at the very least: (1) monetary sanctions and a finding of contempt should any Talisman witness fail to appear for deposition on the date noticed or otherwise ordered by the Court; (2) dismissal of Talisman's Counterclaims should it fail to secure replacement counsel within seven days of the Court's order on this Motion being entered, with such counsel ready to proceed on the current schedule; and (3) costs and fees incurred by Texas Insurance in connection with this Motion.

**CONCLUSION**

For the foregoing reasons, Bradley Firm's Motion to Withdraw as Counsel should be denied until at least such time that Talisman has retained replacement counsel, with an Order entered (1) requiring the Bradley Firm to show cause for why Rule 1.16 has been invoked; (2) requiring Talisman to retain replacement counsel within seven days of the Court's order; (3) ordering depositions to proceed on the current schedule, with the depositions of Helene Bradley and Natalie Lucia set for dates-certain within the next four weeks; and (4) requiring Talisman to show cause for why sanctions should not be imposed.

Dated: November 17, 2025                                     Respectfully submitted,

By: /s/ *Samuel M. Rosamond, III*
Samuel M. Rosamond, III (17122)
srosamond@twpdlaw.com
Jonathan B. Womack, Esq. (#30801)
jwomack@twpdlaw.com
Taylor, Wellons, Politz & Duhe, LLC
1555 Poydras Street –Suite 2000
New Orleans, Louisiana 70112
Phone: 504-525-9888
Fax: 504-525-9899

Shand S. Stephens (admitted *pro hac vice)*
shand.stephens@dlapiper.com
**DLA Piper LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Phone: 415 836 2500

Anthony Todaro (admitted *pro hac vice*)
anthony.todaro@us.dlapiper.com
**DLA Piper LLP (US)**
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104-7029
Phone: 206-839-4800

Negin Hadaghian (admitted *pro hac vice*)
negin.hadaghian@us.dlapiper.com
**DLA Piper LLP (US)**

1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Phone: 212-335-4500

Taylor O. Reed (admitted *pro hac vice*)
taylor.reed@us.dlapiper.com
**DLA Piper LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Phone: 214-743-4500

*Attorneys for Plaintiff Texas Insurance Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 17th day of November 2025, I caused the foregoing document to be electronically served on all counsel of record and filed with the Clerk of the Court, United States District Court for the Eastern District of Louisiana, via the Court's CM/ECF e-filing system.

                                                                                                     */s/ Samuel M. Rosamond, III*